<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:11-cr-00768 (BRM) |
| v. | **OPINION** |
| MARK MANASSE, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Mark Manasse's ("Manasse") motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion"). (ECF No. 394.) The United States of America (the "Government") filed a memorandum of law in opposition (the "Opposition") (ECF No. 399), and Manasse replied to the Opposition (the "Reply") (ECF No. 401). Following oral argument, the Government filed a post-argument opposition letter (ECF No. 405); and Manasse filed a reply (ECF No. 406). Having reviewed and considered the parties' submissions filed in connection with the Motion, as well as argument of counsel, for the reasons set forth below, and for good cause appearing, Manasse's Motion is **GRANTED**.

**I.   BACKGROUND**

On January 7, 2013, Manasse pled guilty to conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846 (Count 1). (ECF No. 194.) On July 23, 2013, the Court imposed a sentence of 325 months of imprisonment, followed by five years of

1

supervised release.[1] (ECF No. 223.) Manasse is currently serving his sentence at FCI Ray Brook ("Ray Brook") in Jonesville, Virginia. (ECF No. 394.)

On February 9, 2023, Manasse submitted a request for compassionate release to the Warden of Ray Brook (the "Warden"). (ECF No. 388 at 3.) The Warden denied Manasse's request on February 14, 2023. (*Id.*)

On May 30, 2024, having exhausted his administrative remedies, Manasse filed this Motion under 18 U.S.C. § 3582(c)(1). (ECF No. 394.) On June 26, 2024, the Government moved to stay the resolution of the Motion pending the disposition of *United States v. Rutherford,* 120 F.4th 360 (3d Cir. 2024) and *United States v. Carter*, No. 24-1115, 2024 WL 5339852 (3d Cir. Dec. 2, 2024) (ECF No. 395), which the Court granted on June 27, 2026 (ECF No. 396). On February 26, 2025, the parties requested the Court to lift the stay (ECF No. 397), which the Court granted (ECF No. 398). On April 18, 2025, the Government filed the Opposition. (ECF No. 399.) Manasse filed the Reply on May 22, 2025. (ECF No. 400.)

On August 11, 2025, the Court held oral argument, where many family members, friends, and associates appeared in support of Manasse. (ECF No. 404.) On September 2, 2025, the Government filed a post-argument opposition letter (ECF No. 405); and Manasse filed a reply (ECF No. 406).

---

[1] On November 1, 2014, Amendment 782 to the United States Sentencing Guidelines was enacted, which reduced the offense levels assigned to most drug quantities by two levels. In response, Manasse moved for a sentence reduction pursuant to 18 U.S.C. § 3582 on November 24, 2014. (ECF No. 243.) The Government filed a memorandum of law in opposition (ECF No. 270), and Manasse replied to the opposition (ECF No. 273). On March 16, 2021, this Court reconsidered the sentence under Amendment 782 and imposed the same sentence. (ECF No. 362.)

On November 1, 2023, Amendment 821 was enacted, which reduced the number of criminal history points one receives for committing an offense while on parole. In response, Manasse moved for a sentence reduction pursuant to 18 U.S.C. § 3582 on December 23, 2025 (ECF No. 407), which remains pending at this time (*see, e.g.*, ECF No. 416 (extending time for the Government to file a memorandum of law in opposition)).

## II.  LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the Bureau of Prisons ("BOP") or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if it finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission (the "Commission") has promulgated a policy statement, which, in relevant part, allows a court to grant compassionate release or a sentence reduction upon a finding of: (i) extraordinary and compelling reasons; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the § 3553(a) factors, to the extent applicable ("Policy Statement"). *See Rutherford*, 120 F.4th at 366 (citing U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2023)); *see also United States v. Williams*, Crim. A. No. 17-0379, 2021 WL 37536, at *2 (D.N.J. Jan. 4, 2021) (citing U.S.S.G § 1B1.13 (U.S. Sentencing Comm'n 2018)); *United States v. Burd*, Crim. A. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. A. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

Congress did not define the phrase "extraordinary and compelling reasons" in 18 U.S.C. § 3582(c)(1)(A), but the Commission's Policy Statement provides "extraordinary and compelling

3

reasons exist under any of the following [six] circumstances or a combination thereof: "(1) Medical Circumstances of the Defendant"; "(2) Age of the Defendant"; "(3) Family Circumstances of the Defendant"; "(4) Victim of Abuse"; "(5) Other Reasons"; and "(6) Unusually Long Sentence." U.S.S.G § 1B1.13. Additionally, "Rehabilitation of the Defendant" is a factor to be considered, but it "is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. *Id.* However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

"[S]entencing courts are . . . permitted 'to exercise broad discretion' to determine whether and to what extent the prisoner warrants, or, in other words, is qualified for, a sentence reduction." *Rutherford*, 120 F.4th at 365 (quoting *United States v. Stewart*, 86 F.4th 532, 534 (3d Cir. 2023)); *see also United States v. Colon*, Crim. A. No. 19-868, 2024 WL 4607486, at *3 (D.N.J. Oct. 25, 2024) ("Although courts are not bound by Section 1B1.13's definition of 'extraordinary and compelling reasons,' courts may still consider the definition as a 'guide' to 'shed[] light on the meaning of extraordinary and compelling reasons.'" (quoting *United States v. Andrews*, 12 F.4th 255, 259–60 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022))); *United States v. Batista*, No. 18-415, 2020 WL 4500044, at *2 (D.N.J. Aug. 5, 2020) ("[C]ourts [have] some flexibility and discretion to consider the unique circumstances of a motion for compassionate release.").

### III. DECISION

The Court engages in a three-step analysis to determine whether to grant a motion for compassionate release. *See United States v. Jones*, Crim. A. No. 09-491, 2025 WL 2533529, at *2 (D.N.J. Sept. 3, 2025). First, whether the defendant has exhausted all administrative rights to appeal under 18 § 3582(c)(1)(A). *See United States v. Johnson*, Crim. No. 21-2649, 2022 WL 1402048, at *1 (3d Cir. May 4, 2022) (noting a court may only entertain a motion for compassionate release

4

"after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility" (quoting 18 U.S.C. § 3582(c))). Second, whether the defendant is eligible for a reduction based on an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13(b)(3). *Rutherford*, 120 F.4th at 364. Third, whether the defendant qualifies for a reduction under "the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id.*

Here, the record establishes Manasse has exhausted all of his administrative rights to appeal. (*See* ECF No. 388 at 3.) Specifically, on February 9, 2023, Manasse filed a request for compassionate release with the Warden. (*Id.*) On February 14, 2023, the request was denied. (*Id.*) The Government does not contest Manasse's satisfaction of the statutory exhaustion requirement but opposes the sentence reduction. (ECF No. 399 at 6.)

Because the Court finds Manasse satisfied the exhaustion of all administrative remedies, the Court must next determine "whether [Manasse] has met his burden to demonstrate an extraordinary and compelling reason justifying a sentence reduction, and . . . whether early release is warranted pursuant to the factors enumerated under 18 U.S.C. § 3553(a)." *Jones*, 2025 WL 2533529, at *2 (citation omitted).

    A.    **U.S.S.G. § 1B1.13(b)(3)**

Effective November 1, 2023, the Commission amended the list of circumstances considered "extraordinary and compelling" meriting compassionate release, which provides a defendant may be granted early release based on: (1) medical circumstances; (2) serious deterioration due to age; (3) family circumstances; (4) abuse by a correctional officer, employee, or contractor; (5) other reasons of similar gravity; or (6) an unusually long sentence. *Id.* at *3 (citing U.S.S.G. § 1B1.13(b)). Manasse seeks compassionate release based on family circumstances, other reasons of similar gravity, and/or

5

an usually long sentence under U.S.S.G. § 1B1.13(b)(3), (5), and (6) respectively. (*See generally* ECF No. 394 at 20–22.) The Court addresses each in turn.

      1.      U.S.S.G. § 1B1.13(b)(3)(A)

First, Manasse seeks compassionate release based on "[t]he death or incapacitation of the caregiver of the defendant's minor child." (*See generally* ECF No. 394 at 20–22.) Specifically, Manasse argues his "motion for compassionate release is based upon the fact that the mother of his child, who had been raising [his son], tragically died. She was the child's caregiver." (ECF No. 401 at 6.) Manasse claims Natasha Fullwood-Travis, the mother and caregiver of Manasse's son, passed away on August 24, 2023. (*Id.* at 9; *see also* ECF No. 394 at 30.) Following her death, Manasse's son has been raised by the maternal grandmother, Pauline Harrison-Fullwood. (*Id.* at 9.) Manasse provided the Court with Ms. Fullwood-Travis's Certificate of Death. (*Id.* at 30.) The Court was further provided with a certification from Ms. Harrison-Fullwood, in which she explained she was awarded custody of Manasse's son following the death of Ms. Fullwood-Travis. (*Id.* at 34.) Ms. Harrison-Fullwood explains she "was not expecting to raise [the grandchildren] the way that I am," and "would have no problem with [Manasse] gaining custody of [his son]." (*Id.*) Manasse's son also wrote to the Court asking for his father's sentence to be reduced. (*Id.* at 36.)

In response, the Government argues "[a] close reading of U.S.S.G. § 1B1.13(b)(3)(A) . . . requires the conclusion that, by providing relief in the event of the 'death or incapacitation of the caregiver of the defendant's minor child,' the Commission intended that 'the'—singular—caregiver would be identified and evaluated." (ECF No. 399 at 16.) In effect, the Government claims to demonstrate an extraordinary and compelling circumstance under U.S.S.G. § 1B1.13(b)(3)(A), a defendant is required to show both: (a) the death or incapacitation of the caregiver of the defendant's minor child; and (b) the defendant is the *only* available or suitable caregiver for the minor child. (*See*

6

ECF No. 405 at 1 ("[T]he child's caregiver, his maternal grandmother, . . . do[es] not purport to claim that she is 'incapacitated.'").)

Prior to November 1, 2023, the Commission defined "extraordinary and compelling reasons" to include "[t]he death or incapacitation of the defendant's *only* family member capable of caring for the defendant's minor child or minor children." *United States v. DeFeo*, Crim. A. No. 90-250, 2008 WL 2557425, at *2 (S.D.N.Y. June 26, 2008) (emphasis added) (quoting U.S.S.G. § 1B1.13(A)(iii) (App. Note 1)). Based on the plain language of the guideline, the courts generally held a defendant was required to establish no other caregiver was available or suitable to care for the minor child to demonstrate an extraordinary and compelling circumstance. *See United States v. Cunningham*, Crim. A. No. 18-017, 2024 WL 4057004, at *8 (D. Md. Sept. 4, 2024) (listing cases); *see, e.g.*, *United States v. Jones*, Crim. A. No. 14-463, 2021 WL 3732877, at *82 (D.N.J. Aug. 24, 2021) ("[W]hen evaluating whether a caregiver is incapacitated, "adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding the [caregiver's] incapacitation[] [and] a statement and letters of documentation that the inmate is the only family member capable of caring for the [minor child] . . . ." (quoting *United States v. Collins*, Crim. A. No. 15-10188, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020))).

However, on November 1, 2023, the Commission modified the definition of "extraordinary and compelling reasons" to include the following:

> (A) The death or incapacitation of *the caregiver* of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be *the only available caregiver* for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be *the only available caregiver* for the parent.

7

> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be *the only available caregiver* for such family member or individual.

U.S.S.G. § 1B1.13(b)(3). Notably, whereas the prior and modified language both require a defendant to establish the death or incapacitation of the caregiver, the modified definition omitted the language requiring the defendant to demonstrate he or she is the "only family member capable of caring for the defendant's minor child." *Compare* U.S.S.G. § 1B1.13(A)(iii) (App. Note 1), *with* U.S.S.G. § 1B1.13(b)(3)(A). Rather, the plain language of U.S.S.G. § 1B1.13(b)(3)(A) only requires the defendant to establish "[t]he death or incapacitation of the caregiver of the defendant's minor child." In contrast, U.S.S.G. § 1B1.13(b)(3)(B), (C), and (D) require the defendant to establish "the defendant would be the only available caregiver" of the defendant's partner, parent, or other immediate family member.

Although the Third Circuit has not addressed this issue, this Court considers persuasive the decisions of several courts that have held a defendant is not required to establish no other caregiver is available or suitable to care for the minor child. *See United States v. Lanphear*, Crim. A. No. 19-019, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024), *aff'd*, No. 24-346, 2024 WL 4562802 (9th Cir. Oct. 24, 2024) ("[T]here is no requirement that the defendant be the child's only available caregiver . . . ."); *United States v. Smith*, Crim. A. No. 21-279, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024) ("[W]hether [the defendant] is the only or best available caretaker for [a minor child] is irrelevant to the present compassionate release inquiry."); *United States v. Lou*, Crim. A. No. 05-514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) ("The extraordinary and compelling nature of such circumstances arises not simply from the fact that an incarcerated single parent must leave their child with a new caregiver. It is the subsequent death of the second caregiver that is undeniably

8

extraordinary and compelling."); *United States v. Turner*, Crim. A. No. 18-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) ("I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter."); *Cunningham*, 2024 WL 4057004, at *9 ("[T]he defendant need not establish that he is the only available caregiver."). *But see United States v. Al Hunaity*, Crim. A. No. 18-723, 2024 WL 982044, at *7 (D.N.J. Mar. 7, 2024) (relying on caselaw preceding the amended policy statement). Accordingly, the Court joins the other courts in finding "plain language of the current Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child." *Cunningham*, 2024 WL 4057004, at *8.

Here, the record establishes Ms. Fullwood-Travis was the caregiver of defendant's minor child and has passed away (ECF No. 401 at 9), which the Government does not contest (*see, e.g.*, ECF No. 399 at 15). This alone is sufficient to demonstrate an extraordinary and compelling reason for compassionate release under U.S.S.G. § 1B1.13(b)(3)(A). Having determined Manasse has demonstrated an extraordinary and compelling reason based on family circumstances under U.S.S.G. § 1B1.13(b)(3)(A), the Court need not review whether he demonstrated same based on other reasons of similar gravity or an usually long sentence under U.S.S.G. § 1B1.13(b)(5) or (6).

### B.     18 U.S.C. § 3553(a)

As Manasse has demonstrated an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(3), the Court must now consider whether the defendant qualifies for a reduction under "the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Rutherford*, 120 F.4th at 364. However, "courts are not required to make specific findings of fact with respect to each of the[] [§ 3553] factors; rather, 'a statement that [the court] has considered the statutory factors is sufficient.'" *United States v. Melvin*, 978 F.3d 49, 52–53 (3d Cir. 2020) (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)).

9

The Court has considered all of the § 3553 factors. As the Government argues only the first, second, and sixth § 3553 factors weigh against early release (*see* ECF No. 399 at 32), the Court addresses, *inter alia*, the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective matter[] [and]
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(6).

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

First, the Government argues the first factor weighs against compassionate release as Manasse's "criminal history is littered with violent acts." (ECF No. 399 at 32.) Although the Government appreciates Manasse's alleged "adolescence" at the time of the offense and subsequent rehabilitation, it notes he has continued to engage with a "propensity for violence and disobedience." (*Id.* at 33.)

The Court finds although the offense was serious, it was non-violent. Furthermore, Manasee has demonstrated significant rehabilitation. Manasse's criminal history includes prior offenses between ages 18–21: obstruction of justice (age 18); conspiracy to violate narcotics laws (age 18); eluding police (age 19); simple possession (age 21); and aggravated assault (age 21). (ECF No. 394 at 15–16.) Manasse appears to take responsibility for his prior actions recognizing the seriousness of his offenses, which he attributes to his exposure of gang life in the inner city as an adolescent. (*See id.* at 15.) However, the Court notes Manasse was twenty-five years old at the time of the offense and therefore, legally, an adult. (*Id.* at 12–15.)

Manasse has been incarcerated for more than 168 months, which is a substantial portion of the 325-month sentence. (*Id.* at 5.) During this time, Manasee has completed over thirty-five educational and drug-rehabilitation programs, taken advantage of vocational training, and maintained good conduct in recent years. (*Id.* at 19.) While there were some disciplinary issues at a prior facility, Manasse credibly explains these issues resulted from a poor situation, which naturally resolved with his transfer. (ECF No. 401 at 9.) Multiple family members have submitted letters offering housing and employment support upon release. (ECF No. 394 at 34, 58, 60.)

Accordingly, the Court finds the first factor—the nature and circumstances of the offense and the history and characteristics of Manasse—weighs in favor of compassionate release.

### 2. The Need for the Sentence Imposed and the Avoidance of Unwarranted Sentencing Disparities

Next, the Government argues the second and sixth factors weigh against compassionate release as the punishment "is necessary to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,' as well as the need to 'afford adequate deterrence,' 'protect the public from future crimes of the defendant,' and 'avoid unwarranted disparities among' similarly situated defendants." (ECF No. 399 at 32.)

The Court finds Manasse's extended incarceration of more than 168 months reflects the seriousness of the offense. After 168 months, the sentence has served its deterrent purpose. Furthermore, the substantial period of imprisonment promotes general deterrence. Manasse's extensive rehabilitative efforts while incarcerated, including consistent participation in educational programming and counseling, demonstrate specific deterrence has been achieved, and the length of the term served would continue to specifically deter him from future misconduct. His educational and rehabilitative record supports that recidivism risk is low. Manasse has shown rehabilitation and positive adjustment. A term of supervised release can adequately address any ongoing supervision needs. Additional incarceration would not provide any further meaningful rehabilitative opportunities.

Accordingly, the Court finds the second and sixth factors—the need for the sentence imposed and the avoidance of unwarranted sentencing disparities—weights in favor of compassionate release. Taken together, the Court finds Manasse has matured, rehabilitated, and re-entered society's expectations of law-abiding conduct.

For the above-stated reasons, the Motion for Compassionate Release is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, and for good cause appearing, Manasse's Motion (ECF No. 394) is **GRANTED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: February 2, 2026