**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARK MANASSE,<br>Defendant. | Case No. 2:11-cr-00768-3 (BRM)<br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is the United States of America's (the "Government") Motion for Reconsideration (the "Motion") (ECF No. 422) of the Court's Amended Order (ECF No. 421) granting Defendant Mark Manasse's ("Manasse") motion for compassionate release (ECF No. 394) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Section 3582"). Manasse filed a memorandum of law in opposition (ECF No. 427), and the Government replied to the opposition (ECF No. 429). Following oral argument on May 14, 2026, Manasse filed a post-argument opposition letter (ECF No. 435), and the Government filed a response to same (ECF No. 436). Having reviewed and considered the parties' submissions filed in connection with the Motion, as well as argument of counsel, for the reasons set forth below, and for good cause appearing, the Government's Motion is **DENIED**.

## I. BACKGROUND

Manasse is the father of a fourteen-year-old son (the "child") with Natasha Fullwood-Travis ("Fullwood"). (*See* ECF No. 370-2.) On January 7, 2013, Manasse pled guilty to conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. (ECF No. 194.) On July 23, 2013, the Court imposed a violence enhancement under United States Sentencing Guideline § 2D1.1(b)(2) and sentenced Manasse to 325 months of imprisonment,

followed by 5 years of supervised release. (ECF No. 223.) Manasse is currently serving his sentence at FCI Ray Brook ("Ray Brook") in Jonesville, Virginia. (ECF No. 394.)

On November 24, 2014, Manasse filed a motion for modification of sentence based on Amendment 782 to the United States Sentencing Guidelines (ECF No. 243; *see also* ECF No. 343 (re-briefing the motion)), which the Court granted, reducing the base offense level by two levels and the sentencing range to 262 to 327 months (ECF No. 348; *see also* ECF No. 363 at 15). On March 16, 2021, the Court resentenced Manasse to 325 months of imprisonment, *i.e.*, the same sentence originally imposed. (ECF No. 362.) Manasse subsequently appealed the March 16, 2021 Order. (ECF No. 368.)

On December 1, 2021, the Division of Child Protection and Permanency (the "DCPP") initiated a safety protection plan due to Fullwood's substance abuse and mental health challenges, which placed the child in the temporary custody of his maternal grandmother, Pauline Harrison-Fullwood ("Harrison"). (ECF No. 370-2 at 14–16.) On January 3, 2022, the Superior Court of New Jersey, Chancery Division – Family Part, entered an order to show cause for temporary custody, which placed the child in the DCPP's legal custody and Harrison's physical custody based on Fullwood's incapacitation (the "Temporary Custody Order"). (*Id.*). The Temporary Custody Order, however, entitled Fullwood to supervised visitation rights "on a liberal basis." (*Id.* at 4.)

On December 14, 2022, Manasse filed a motion for compassionate release *pro se* pursuant to Section 3582. (ECF No. 370; *see also* ECF No. 374.) Manasse's motion for compassionate release was based, in part, upon family circumstances, *i.e.*, Fullwood's incapacitation. (ECF No. 370 at 6–9.) On January 26, 2023, the Government filed an opposition, which requested the Court to defer consideration of the motion for lack of jurisdiction due to Manasse's appeal of the March 16, 2021 Order, which remained pending at the time. (ECF No. 375.) On February 10, 2023, the Court entered

an order deferring consideration of the motion pending the outcome of the appeal pursuant to Rule 37. (ECF No. 376.)

On August 24, 2023, Fullwood passed away. (ECF No. 401 at 9; *see also* ECF No. 394 at 30.) Approximately one month later, Manasse's appeal of the March 16, 2021 Order was denied on procedural grounds, *i.e.*, for failure to file a timely notice of appeal. (ECF No. 383.)

On January 2, 2024, Manasse filed a second motion for compassionate release *pro se* pursuant to Section 3582. (ECF No. 388.) Manasse's second motion for compassionate release was again based, in part, upon family circumstances, *i.e.*, Fullwood's passing. (*Id.* at 10.) However, before the Court could review either *pro se* motion for compassionate release on the merits, Manasse was appointed counsel. (ECF No. 389.) As a result, on March 15, 2024, the Court administratively terminated both pending *pro se* motions for compassionate release and instructed appointed counsel to file a new motion for same as soon as reasonably practical. (ECF No. 391.)

On May 30, 2024, Manasse through counsel filed the new motion for compassionate release pursuant to Section 3582. (ECF No. 394.) The motion for compassionate release, consistent with the prior *pro se* motions for same, was again based, in part, upon family circumstances, *i.e.*, Fullwood's passing. (*See id.*) On June 26, 2024, the Government moved to stay the resolution of the motion pending the disposition of *United States v. Rutherford* (*Rutherford I*), 120 F.4th 360 (3d Cir. 2024), and *United States v. Carter*, No. 24-1115, 2024 WL 5339852 (3d Cir. Dec. 2, 2024) (ECF No. 395), which the Court granted on June 27, 2024 (ECF No. 396). On February 26, 2025, Manasse requested the Court to lift the stay based on the cases dispositions (ECF No. 397), which the Court granted the same day (ECF No. 398). The Government filed an opposition on April 18, 2025 (ECF No. 399); and Manasse filed a reply on May 22, 2025 (ECF No. 400). On August 11, 2025, the Court held oral argument, where many family members, friends, and associates appeared in support of Manasse. (ECF No. 404.) On September 2, 2025, the Government filed a post-argument opposition letter (ECF

No. 405), and Manasse filed a reply (ECF No. 406). On February 2, 2026, the Court granted the motion for compassionate release. (ECF Nos. 417, 418; *see also* ECF No. 421 (amending the order to correct typographical error).)

On February 6, 2026, the Government filed the Motion for Reconsideration of the February 2, 2026 Order (the "Motion for Reconsideration") and to Stay the Compassionate Release pending the resolution of same (the "Motion to Stay"). (ECF No. 422.) On February 9, 2026, the Court entered a scheduling order on the Motion for Reconsideration. (ECF No. 423.) On February 11, 2026, the Court held a telephone conference and hearing with the parties on the Motion to Stay. (ECF No. 424.) That same day, the Court entered an order granting the motion and staying compassionate release pending the resolution of the Motion for Reconsideration. (ECF No. 425.) In compliance with the scheduling order (ECF No. 423), Manasse filed an Opposition on February 13, 2026 (ECF No. 427), and the Government filed a Reply on February 20, 2026 (ECF No. 429).[1]

On May 14, 2026, the parties attended oral argument, during which Manasse appeared in person and addressed the Court. Manasse claimed he takes full responsibility for his prior actions recognizing the seriousness of his offenses and the harm those actions have caused both the public generally and his child specifically. Manasse testified he seeks release with the intention to care for and to raise his son. The Court found Manasse to be attentive, patient, and respectful throughout the oral argument and his testimony to be both earnest and credible. At the conclusion of oral argument, the Government requested that, if the Court denies the Motion for Reconsideration, the Court allow the Government fourteen days to decide whether to appeal the denial of same before releasing Manasse.

[1] On March 20, 2026, Manasse addressed a letter to the Court thanking it "for giving me a chance to be back in society" and "to be able to be the man my son [and] my family wants me to be." (ECF No. 431.)

Following oral argument, the Court invited the parties to file post-argument briefings as needed. (*See* ECF No. 434.) On May 29, 2026, Manasse filed a post-argument letter. (ECF No. 435.) The Government filed a response on June 30, 2026.[2] (ECF No. 436.)

## II. Legal Standard

### A. Motion for Reconsideration

Although a motion for reconsideration is not expressly authorized by the Federal Rules of Criminal Procedure, "the Third Circuit has recognized that such motions may be filed in criminal matters." *United States v. Rensing*, 12-663, 2022 WL 3227131, at *2 (D.N.J. Aug. 10, 2022) (citing *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003)). "[R]econsideration is an extraordinary remedy, that is granted 'very sparingly.'" *Brackett v. Ashcroft*, Civ. A. No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 215 F. Supp. 2d. 482, 507 (D.N.J. 2002)); *see also Rensing*, 2022 WL 3227131, at *3 (permitting a party to file a motion for reconsideration in a criminal action under both Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i)); *McKinney v. Fitzgerald*, Civ. A. No. 18-12987, 2024 WL 1344022, at *1 (D.N.J. Mar. 5, 2024) (noting the standard for reconsideration is identical under both Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i)).

A motion for reconsideration "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 52 (3d Cir. 2018) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

---

[2] On July 1, 2026, Manasse filed a reply to the Government's response, which merely stated no further briefing is warranted and the issue "is ripe for decision." (ECF No. 437.)

To prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A court commits clear error of law "only if the record cannot support the findings that led to that ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008)). Accordingly, a party must demonstrate "(1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. *See* L. Civ. R. 7.1(i); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule.").

In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Schiano v. MBNA Corp.*, Civ. A. No. 05–1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the [c]ourt will not suffice to show that the [c]ourt overlooked relevant facts or controlling law and should be dealt with through the normal appellate process." (citations omitted)).

### B. Motion for Compassionate Release

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is compassionate release pursuant to Section 3582. The statute, as amended by the First Step Act of 2018 (the "First Step Act"), allows a motion for such relief to be brought by either the Director of the Bureau of Prisons ("BOP") or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if it finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission (the "Commission") has promulgated a policy statement, which, in relevant part, allows a court to grant compassionate release or a sentence reduction upon a finding of: (i) extraordinary and compelling reasons; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the § 3553(a) factors, to the extent applicable ("Policy Statement"). *See Rutherford I*, 120 F.4th at 366 (citing U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2023)); *see also United States v. Williams*, Crim. A. No. 17-379, 2021 WL 37536, at *2 (D.N.J. Jan. 4, 2021) (citing U.S.S.G § 1B1.13 (U.S. Sentencing Comm'n 2018)); *United States v. Burd*, Crim. A. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. A. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

Congress did not define the phrase "extraordinary and compelling reasons" in Section 3582, but the Commission's Policy Statement provides "extraordinary and compelling reasons exist under

any of the following [six] circumstances or a combination thereof: "(1) Medical Circumstances of the Defendant"; "(2) Age of the Defendant"; "(3) Family Circumstances of the Defendant"; "(4) Victim of Abuse"; "(5) Other Reasons"; and "(6) Unusually Long Sentence." U.S.S.G § 1B1.13. Additionally, "Rehabilitation of the Defendant" is a factor to be considered, but it "is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* "[S]entencing courts are . . . permitted 'to exercise broad discretion' to determine whether and to what extent the prisoner warrants, or, in other words, is qualified for, a sentence reduction." *Rutherford I*, 120 F.4th at 365 (quoting *United States v. Stewart*, 86 F.4th 532, 534 (3d Cir. 2023)).

## III. Decision

The Court engages in a three-step analysis to determine whether to grant a motion for compassionate release. *See United States v. Jones*, Crim. A. No. 09-491, 2025 WL 2533529, at *2 (D.N.J. Sept. 3, 2025). First, whether the defendant has exhausted all administrative rights to appeal under Section 3582. *See United States v. Johnson*, Crim. No. 21-2649, 2022 WL 1402048, at *1 (3d Cir. May 4, 2022). Second, whether the defendant is *eligible* for a reduction based on an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13(b). *See Rutherford I*, 120 F.4th at 364–65 (describing the second step as a threshold question of law). Third, whether the defendant is *qualified* for a reduction based on the sentencing factors under 18 U.S.C. § 3553(a). *Id.*

On February 2, 2026, the Court granted Manasse's motion for compassionate release. (ECF Nos. 417, 421.) In support of same, the Court engaged in the required three-step analysis and determined Manasse: (1) had exhausted all of his administrative rights to appeal under Section 3582 (*see* ECF No. 417 at 3); (2) was eligible for a reduction based on an "extraordinary and compelling"

reason under U.S.S.G. § 1B1.13(b)(3)(A), *i.e.*, Fullwood's passing (*see id.* at 3–5); and was qualified for a reduction based on the sentencing factors under 18 U.S.C. § 3553(a) (*see id.* at 5–6). In response, the Government moves for reconsideration of the February 2, 2026 Order arguing reconsideration is appropriate to correct the following manifest errors of law: (A) Manasse was not eligible under U.S.S.G. § 1B1.13(b) (ECF No. 422 at 1–3); and (B) Manasse was not qualified under 18 U.S.C. § 3553(a) (*id.* at 3–4). The Court addresses each argument in turn.

**A. Manasse is Eligible for Reduction under U.S.S.G. § 1B1.13(b).**

The Government moves for reconsideration of the February 2, 2026 Order arguing Manasse was not eligible for reduction under U.S.S.G. § 1B1.13(b). (*See id.* at 1–3.) Specifically, the Government claims the Court's determination that Fullwood's passing demonstrated an extraordinary and compelling reason was a manifest error of law because Fullwood was not *a* caregiver at the time of her passing as the child had been removed from her custody prior to her passing. (*Id.* at 1–3). Notably, the Government raises this argument for the first time in its Motion for Reconsideration. (*See generally* ECF No. 399 at 15–18 (merely arguing Fullwood was not *the* caregiver, *i.e.*, the primary caregiver, at the time of her passing).)

In response, Manasse argues Fullwood was still *a* caregiver at the time of her passing on August 24, 2023, or, alternatively, was *the* caregiver at the time of her incapacitation on January 3, 2022 (*see* ECF No. 427 at 2–3.) In turn, the Government concedes Fullwood was *the* caregiver prior to January 3, 2022. (*See* ECF No. 429 at 3 (claiming the record shows Fullwood "was likely incapacitated with addiction throughout [2021]").) However, the Government argues Manasse is nonetheless time-barred from basing his motion for compassionate release on Fullwood's incapacitation because he failed to file the motion within a reasonable time following same. (*See id.* at 2–4.) The Government cites no authority in support of the argument a defendant must file a motion for compassionate release within a specified time following the death or incapacitation of the

caregiver of the defendant's minor child (*see generally id.* at 2–4), nor has the Court found any, *see United States v. Gluzman*, Crim. A. No. 96-323, 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020) ("Section 3582 thus stands in stark contrast to those statutory regimes where Congress has required a plaintiff to file a judicial motion within a specified time following administrative action or inaction."). Therefore, based on the Commission's recent modification to the guidelines,[3] the

---

[3] In support of its request for reconsideration, the Government notes the Commission first eliminated the requirement a prisoner demonstrate he or she is the only family member capable of caring for the minor child in 2016, not 2023. (*See* ECF No. 422 at 3 n.1 (citing ECF No. 417 at 7).) In response, the Court notes the following history of the compassionate release statute and relating statements.

In 1984, Congress passed the compassionate release statute, which, in relevant part, "allows a sentencing court to reduce the sentence of a prisoner if 'extraordinary and compelling reasons warrant such a reduction.'" *Rutherford I*, 120 F.4th at 363–65 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "Congress did not define the phrase 'extraordinary and compelling reasons' in the compassionate release statute . . . . [and,] [i]nstead, it instructed the Commission to define it." *Id.* at 365 (citing 28 U.S.C. § 994(t)). In 2007, the Commission amended its policy statement to provide in the commentary examples of an "extraordinary and compelling reason," which included "[t]he death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children." U.S.S.G. § 1B1.13 app. n.1(A)(iii) (U.S. Sentencing Comm'n 2007). In 2016, the Commission again amended the statement, removing the requirement a prisoner demonstrate he or she is the only family member capable of caring for the minor child and making a prisoner eligible for compassionate release based simply on "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." *See* U.S.S.G. § 1B1.13 app. n.1(C)(i) (U.S. Sentencing Comm'n 2016). Following this amendment, however, courts split on the issue of whether a prisoner must still demonstrate he or she is the only family member capable of caring for his or her minor child to be eligible for compassionate release. *See United States v. Mason*, Crim. A. No. 17-191, 2021 WL 2530781, at *2 (D.N.J. June 21, 2021).

In 2018, Congress passed the First Step Act, which, in relevant part, allowed prisoners to directly file a motion for compassionate release based on "extraordinary and compelling reasons." *See Rutherford I*, 120 F.4th at 365. As the prior statements merely defined an "extraordinary and compelling reason" within the context of a motion for compassionate release filed by the BOP, the statements were held to be inapplicable within the context of a motion directly filed by a prisoner. *See United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). In 2023, however, the Commission again amended the statement to define the phrase within the context of a direct motion for compassionate release, which expanded the definition of the phrase in the text of the statement to include the traditional examples of an "extraordinary and compelling reason," including "[t]he death or incapacitation of the caregiver of the defendant's minor child." *See* U.S.S.G. § 1B1.13(b)(3)(A) (U.S. Sentencing Comm'n 2023). Following this amendment, the Third Circuit has held the amended statement to be generally binding on the courts. *See Rutherford I*, 120 F.4th at 375. Based on the plain language of the amended statement, courts have generally held a defendant is not required to

question of whether a defendant may be time-barred to file a motion for compassionate release appears to be an issue of first impression and, as such, the Court will review the issue under the totality of the circumstances.

It is well-established, the phrase "extraordinary and compelling reasons" is not defined in the compassionate release statute and, as such, the Commission was authorized to promulgate policy statements defining same. *See Rutherford I*, 120 F.4th at 363–65, 375. Although these statements are generally binding on the courts, "the Commission's authority to issue biding policy statements is not unlimited." *Id.* at 375. Therefore, the courts are merely required to abide by the policy statements to the extent the statements are consistent with the pertinent provisions of the compassionate release statute, *i.e.*, to the extent the circumstances demonstrate both an "extraordinary" and "compelling" reason. *See id.* at 375–76; *see also Rutherford v. United States* (*Rutherford II*), 608 U.S. ---, 146 S. Ct. 1320, 1332, 1334 (2026) (holding the Commission may not adopt a definition of the terms "extraordinary" and "compelling" inconsistent with the governing statute).

---

establish no other caregiver is available or suitable to care for the minor child, *see United States v. Lanphear*, Crim. A. No. 19-019, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024), *aff'd*, No. 24-346, 2024 WL 4562802 (9th Cir. Oct. 24, 2024); *United States v. Smith*, Crim. A. No. 21-279, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024); *United States v. Lou*, Crim. A. No. 05-514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023); *United States v. Turner*, Crim. A. No. 18-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020); *United States v. Cunningham*, Crim. A. No. 18-017, 2024 WL 4057004, at *9 (D. Md. Sept. 4, 2024), which this Court similarly held in the February 2, 2026 Order granting compassionate release under 18 U.S.C. § 3553(a) (*see* ECF Nos. 418, 421).

Accordingly, the Commission did not amend the *definition* of the phrase "extraordinary and compassionate release" until 2023, *compare* U.S.S.G. § 1B1.13 app. n.1(C)(i) (U.S. Sentencing Comm'n 2016) (merely listing the family circumstance as an example of an "extraordinary and compelling reason"), *with* U.S.S.G. § 1B1.13(b)(3)(A) (U.S. Sentencing Comm'n 2023) (listing such a circumstance as a reason making a prisoner eligible for compassionate release), which defined the phrase for the first time in the context of directly filed motions for compassionate release, *see Rutherford I*, 120 F.4th at 365 (citing *Andrews*, 12 F. 4th at 259). In other words, although perhaps persuasive, decisions pertaining to a motion for compassionate release filed by the BOP prior to 2023 are not binding on a court reviewing a motion directly filed by a prisoner.

"Each of the terms, 'extraordinary' and 'compelling,' has a distinct meaning" and "each element of the conjunction [must] be satisfied separately and individually . . . . for compassionate release to be available." *United States v. Andrews*, 480 F. Supp. 3d 669, 683 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021). The term "extraordinary" has been defined as "[b]eyond what is usual, customary, regular, or common." *Id.* at 682–83 (alteration in original) (quoting *Extraordinary*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *accord United States v. Babbs*, Crim. A. No. 15-195, 2023 WL 4686323, at *4 (D.N.J. July 21, 2023); *see also Rutherford II*, 146 S. Ct. at 1330 (defining the term "extraordinary" as "most unusual," "far from common," or "having little or no precedent" (quoting *Extraordinary*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807 (1976)). And the term "compelling" as "[a] need so great that irreparable harm or injustice would result if it is not met." *Andrews*, 480 F. Supp. 3d at 683 (alteration in original) (quoting *Compelling Need*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *accord Babbs*, 2023 WL 4686323, at *4; *see also Rutherford II*, 146 S. Ct. at 1330 (defining the term "compelling" as "tending to convince or convert by or as if by forcefulness of evidence" (quoting *Compelling*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 463). Together, an "extraordinary" and "compelling" reason is one which "is both unusual (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and significant (*i.e.*, serious enough to make release appropriate)." *United States v. Alston*, Crim. A. No. 03-844, 2023 WL 2238297, at *4 (D.N.J. Feb. 27, 2023); *see also Rutherford II*, 146 S. Ct. at 1330 ("'[E]xtraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing.").

A significantly delayed motion for compassionate release based on the death or incapacitation of a caregiver does not present a "compelling" basis for compassionate release. Rather, there inherently exists some sense of exigency intrinsic to the definition of "compelling," *see Andrews*, 480 F. Supp. 3d at 683 (defining "compelling" as "[a] need so great that irreparable

harm or injustice would result if it is not met" (internal quotation marks omitted)), which is perhaps best evidenced by the traditional bases for compassionate release, *i.e.*, age, medical circumstances, and family circumstances, *Rutherford I*, 120 F.4th at 366 n.8. For example, a "compelling" reason based on age requires the defendant to demonstrate "a serious deterioration in physical or mental health because of the aging process." *See* U.S.S.G. § 1B1.13(b)(2). Similarly, medical circumstances requires the defendant to demonstrate he or she is suffering from "a serious and advanced illness with an end-of-life trajectory," a serious condition, impairment, or deterioration "from which he or she is not expected to recover," or a condition with a serious risk of deterioration or death that "cannot be adequately mitigated in a timely manner." *See* U.S.S.G. § 1B1.13(b)(1). Finally, family circumstances involving an immediate family member other than the defendant's child requires the defendant to demonstrate the family member is incapacitated, *i.e.*, incapable of self-care, and "the defendant would be the only available caregiver for the [family member]." *See* U.S.S.G. § 1B1.13(b)(3)(B), (C), (D). All of these bases represent personal circumstances that, if true, will expectedly worsen with the passage of time to the further detriment of the defendant or the defendant's family members, *see* U.S.S.G. § 1B1.13(b)(1), (2), (3)(B), (C), (D), encouraging the prompt filing of a request to bring a motion for compassionate release and the subsequent motion for same, and discouraging purposeful delay and strategic gamesmanship.

In contrast, family circumstances involving a defendant's child do not require the defendant to demonstrate he or she would be the only available caregiver for the child. (*See* ECF No. 417 at 8.) Absent such a requirement, a defendant may purposefully delay moving for compassionate release based on strategic gamesmanship as the child could be placed indefinitely in the physical custody of an available and suitable caregiver without fear of further detriment to the child. For example, a defendant is sentenced to twenty years of imprisonment and incarcerated. Approximately one year later, the mother of the defendant's child passes away. Recognizing the unlikelihood the court would

find the defendant *qualified* for compassionate release at the time, the defendant purposefully delays moving for compassionate release until nine years later, *i.e.*, until his sentence is half completed. Absent any time restriction in which to file the motion for compassionate release, that defendant would still be *eligible* for compassionate release based on the death of the child's mother nine years prior. Such a result does not represent a "compelling" reason and, as such, is inconsistent with the compassionate release statute. *See Rutherford II*, 146 S. Ct. at 1334 (holding the Commission may not adopt a definition of the terms "extraordinary" and "compelling" inconsistent with the governing statute). Accordingly, the requirement that a motion for compassionate released based on the death or incapacitation of the caregiver of the defendant's child must be filed within a reasonable time of same is implicit to the structure and purpose of the statute, *see Chiaccheri v. Zurich Am. Ins. Co.*, Civ. A. No. 23-7056, 2024 WL 3518118, at *3 (D.N.J. July 24, 2024) (noting a statutory requirement is "implicit if it is necessary to make the statute workable or to give it the most sensible interpretation" (internal quotation marks omitted)), which is to be determined by the courts from the facts and circumstances of each individual matter, *see Rutherford II*, 146 S. Ct. at 1332 (noting the courts are provided with "discretion to consider the unique circumstances of a motion for compassionate release").

Here, based on the totality of the circumstances, the Court finds Manasse moved for compassionate release within a reasonable time of Fullwood's incapacitation. On January 3, 2022, the Superior Court of New Jersey entered the Temporary Custody Order. (ECF No. 370-2.) Although the Court recognizes the date of incapacitation occurred prior to the entry of the order as a matter of fact, the Court questions whether a defendant could establish incapacitation while the DCPP was still hopeful of a reunion between Fullwood and the child. *See United States v. Taylor*, Crim. A. No. 06-699, 2024 WL 3594315, at *2 (D.N.J. July 31, 2024) (requiring a defendant to establish the caregiver's incapacitation "by a preponderance of the evidence"); *see New Jersey Div. of Youth &*

*Fam. Servs. v. L.J.D.*, 54 A.3d 293, 314–15 (N.J. Super. Ct. App. Div. 2012) (noting the DCPP's statutory burden to focus its reasonable efforts on reunification). In contrast, there is no question Fullwood was incapacitated as a matter of law at the time the order was entered as determined by the Superior Court of New Jersey.

In response, Manasse filed his first *pro se* motion for compassionate release based, in part, on Fullwood's incapacitation on December 14, 2022 (ECF No. 370; *see also* ECF No. 374), which was subsequently stayed and ultimately administratively terminated to be re-filed (ECF Nos. 376, 391). Had the Court reviewed the *pro se* motion for compassionate release on the merits, there is no question the Court would have found Manasse eligible for a sentence reduction at the time based on Fullwood's incapacitation. *See United States v. Hight*, 488 F. Supp. 3d 184, 188 (E.D. Pa. 2020) (noting the purpose of Section 3582, as amended by the First Step Act, is "to increase the availability of compassionate release and to ensure prompt judicial review of such requests"). As noted by both parties, the significant delay between the filing of the *pro se* motion for compassionate release on December 14, 2022, and the ultimate order granting compassionate release on February 2, 2026, was not the fault of Manasse. (*See* ECF No. 436 (agreeing "Manasse is not at fault for the four year[] [delay]" (internal quotation marks omitted)).) Therefore, in the interests of justice and consistent with the underlying purpose of compassionate release, the Court finds Manasse moved for compassionate release within a reasonable time of Fullwood's incapacitation under the circumstances of this matter.[4] Accordingly, the determination that Manasse was eligible for

---

[4] In its reply (ECF No. 429 at 3) and response (ECF No. 436 at 2), the Government argues in the first instance the Court failed to consider whether the defendant would be a suitable caregiver for the minor child, which the Government argues may be considered at this step under U.S.S.G. § 1B1.13(b). (*See also* ECF No. 399 at 18 n.6 (raising this issue in a footnote).) *But see John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). As the plain language of the guideline merely requires a defendant to establish the death or incapacitation of the caregiver and does not require the defendant to establish he is suitable to care for a minor child,

compassionate release was not a manifest error of law requiring reconsideration of the February 2, 2026 Order. Having determined Manasse was eligible for reduction based on Fullwood's incapacitation, the Court need not determine whether Manasse was also eligible for reduction based on her death.

Based on the foregoing, the Government's Motion for Reconsideration of the February 2, 2026 Order holding Manasse was eligible for reduction under 18 U.S.C. § 3553(a) is **DENIED**.

**B. Manasse is Qualified for Reduction under 18 U.S.C. § 3553.**

The Government also moves for reconsideration of the February 2, 2026 Order, arguing Manasse was not qualified for reduction under 18 U.S.C. § 3553(a). (*See* ECF No. 422 at 3–4.) Specifically, the Government claims the Court's characterization of Manasse's offense as a "non-violent" offense was a manifest error of law. (*Id.* at 1–3.) Notably, the Government does not assert a conspiracy to distribute offense is a "violent" offense. (*See generally id.*) Rather, the Government contends the violence sentencing enhancement converted the non-violent conspiracy to distribute offense into a violent offense as a matter of law. (*See id.* at 1–3.) The Government fails to cite to any

---

however, such a consider is neither required nor appropriate at this step of the analysis. Rather, such considerations are more appropriately reviewed under the third step—whether the defendant *qualifies* for a reduction, which considers multiple factors including the "characteristics of the defendant." 18 U.S.C.A. § 3553(a)(1); *see United States v. Centeno-Morales*, 90 F.4th 274, 281 (4th Cir. 2024) (holding a defendant was *eligible* for compassionate release based on the death of the caregiver of the defendant's minor child but the defendant was not *qualified* based, in part, on his failure to demonstrate his suitability under 18 U.S.C. § 3553(a)); *see also United States v. Merle Seeking Land*, Crim. A. No. 15-30081, 2024 WL 3887068, at *5 (D.S.D. Aug. 21, 2024); *United States v. Anderson*, Crim. A. No. 98-143, 2023 WL 3940117, at *6 (E.D. Va. June 9, 2023); *United States v. Kitroser*, Crim. A. No. 15-019, 2023 WL 3173513, at *7 (S.D.N.Y. May 1, 2023) (considering the defendants relationships with their children under 18 U.S.C.A. § 3553(a)).

At this step, the Court found Manasse had demonstrated significant rehabilitation completing over thirty-five educational and drug-rehabilitation programs as well as vocational training while maintaining good conduct. (ECF No. 417 at 11.) Furthermore, multiple family members submitted letters offering housing and employment support upon release. (*Id.*) In response, the Government has not challenged the Court's determination as it pertains to the characteristics of Manasse. (*See generally* ECF No. 422.)

authority in support same, *see Bowers*, 130 F. Supp. 2d at 612–13 (requiring a party moving for reconsideration to set forth the overlooked authority, “which, if considered by the [c]ourt, might reasonably have resulted in a different conclusion”), nor has the Court found any, *see Roussos v. Menifee*, 122 F.3d 159, 163 (3d Cir. 1997) (holding the parties may not “ignor[e] the offense of conviction and look[] only to sentencing factors . . . to transmogrify a ‘nonviolent offense’ into a ‘crime of violence’”); *accord Magnin v. Beeler*, 110 F. Supp. 2d 338, 341 (D.N.J. 2000). Furthermore, the Government fails to explain how, if at all, the qualification analysis would change if the conspiracy to distribute offense was converted from a nonviolence offense into a violent offense. *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (“Mere ‘disagreement with the Court’s decision’ does not suffice.” (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353)); *see also Compaction Sys.*, 88 F. Supp. 2d at 345 (“Mere disagreement with a court’s decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].”) Accordingly, the determination that Manasse was qualified for compassionate release was not a manifest error of law requiring reconsideration of the February 2, 2026 Order.

Based on the foregoing, the Government’s Motion for Reconsideration of the February 2, 2026 Order holding Manasse was qualified for reduction under 18 U.S.C. § 3553(a) is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, and for good cause appearing, the Government's Motion for Reconsideration (ECF No. 422) is **DENIED**. Per the Government's request at oral argument, the Government has fourteen days from the date of the accompanying Order to file an appeal. If the Government fails to appeal this order within the time allocated, then the Court's Order (ECF No. 425) staying Manasse's compassionate release shall be automatically lifted. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: July 31, 2026